JULIUS H. KRUSE, RESPONDENT, v. PHILIP FERBER,
APPELLANT.

Submitted December 6, 1917—Decided March 4, 1918.

1. Defendant contracted in writing with the plaintiff whereby plaint-
iff was to secure, within a prescribed time, a purchaser for real
estate, in consideration of which plaintiff was to be paid two
per cent. commission upon the purchase price, regardless of who
sold the property during that period. Defendant sold the prop-
erty himself and refused to pay the commissions. Plaintiff
brought suit to recover the commissions., and at the trial it
appeared that the title to the property was in the name of de-
fendant's wife. *Held*, that regardless of the question of owner-
ship, the defendant's contract was sufficient to impose liability
upon him after the other party to the contract, upon the strength
of the promise, had acted upon it.

2. In order to avoid personal liability on a contract, entered into
by him on behalf of his principal, it is the duty of an agent to
disclose not only the fact that he is acting in a representative
capacity, but also the identity of his principal.

On appeal from the Hoboken District Court.

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the respondent, *Horace L. Allen.*

For the appellant, *John N. Platoff.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff, a real estate broker, was au-
thorized for a period of four months, in writing, by defend-
ant, to secure a purchaser for property, in Weehawken, for
$13,600, in consideration of which he was to be paid a com-
mission of two per cent. upon the purchase price, which sum
was to be paid to plaintiff regardless of who sold the prop-
erty during the period.

The defendant within the time prescribed sold the prop-
erty himself, and, refusing to pay the stipulated commissions,
the plaintiff brought this suit to recover them. It appeared

at the trial that the title to the property was in the name of defendant's wife. A nonsuit was requested on two grounds—*first*, that defendant was not the owner of the premises so as to bind himself as such within the meaning of the statute of frauds; *second*, that the contract was without consideration. The second ground is unsubstantial. The first ground requires consideration and is dispositive of the case.

The legal difficulty, if any, inheres in the fact that defendant was not the owner of the premises and did not therefore come within the language of the statute. The language of the contract was that if the property be sold "by us," or "any other person in our behalf," the commissions should accrue.

The extent of his ownership was no more than that formerly belonging to a tenant by curtesy initiate, which gave him a joint right of possession with his wife, and a possibility of a life estate upon the birth of living issue. It might be argued from this that his legal status was sufficient to classify him as the owner of an interest in the premises, an interest sufficiently generic to qualify him to subscribe himself as owner within the meaning of the act. But we do not think it necessary to resort to this reasoning. We prefer to place the decision upon the ground that the defendant's contract, regardless of the question of ownership, and considered entirely as the act of an independent agency, was sufficient to impose liability upon him after the other party to the contract, upon the strength of the promise, had acted upon it.

This conception of the legal status of the parties places the plaintiff in the attitude of an employe hired for a specific purpose, regardless of the interest of the employer in the subject-matter of the contract, and imposes liability upon the latter regardless of his ownership of the subject-matter. *McCauley v. Ridgewood Trust Co.,* 81 *N. J. L.* 86; 2 *C. J.* 814, and cases cited.

Such a contract is essentially one of hire, which may be based by the employer upon personal or sentimental reasons; and which is predicated upon the fact that by reason of the promise, and the performance of the work or labor thereunder by the promissee, an *assumpsit* has arisen *ex aequo et bono* in

favor of the latter, who by reason thereof has changed his status to his detriment. *Whitcomb* v. *Brant,* 90 *N. J. L.* 245.

The situation presents a legal status of mutual or dependent promises where one party has earned the compensation by performance, and an *assumpsit* is evoked *ex debito justitiæ,* in his behalf.

In one of the old cases (*Rogers* v. *Snow,* 1 *Dal.* 94) the court, illustrating the elementary doctrine inherent in this proposition, said: "If I promise a man twenty shillings for going to York, in an action upon this promise, he must allege performance upon his part." 2 *St.* 135, and cases cited.

In such a situation the plaintiff's duty was performed under the terms of the contract, if he was instrumental in any way, in endeavoring to effectuate the sale, by a *bona fide* effort to convey information of the fact covered by the contract, by exhibiting signs, publishing notices, circulars or bulletins, whether or not he in fact as a result of his efforts personally sold the property. *Dresser* v. *Gilbert,* 81 *N. J. L.* 358.

There is also the further legal consideration in the case, based essentially on the doctrine of estoppel, that it was permissible for the defendant, even upon the assumption of his agency, to bind himself personally by a course of conduct incompatible with the status of agency.

Thus, we find it laid down: "It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal; as the person dealt with is not bound to inquire whether or not the agent is acting as such for another." 2 *Corp. Jur.* 816, and cases cited; *Hall* v. *Bradbury,* 40 *Conn.* 32; *Fleischer* v. *Wein* (*Conn.*), 102 *Atl. Rep.* 769; 2 *Kent Com.* 630.

The contract in the case *sub judice* was signed by defendant individually, and, so far as the case shows, without reference to his ownership of the property; and upon the legal principles to which we have adverted, his liability was manifest upon the happening of the contingency described in the contract.

The judgment will accordingly be affirmed, with costs.